

DA 06-0233

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 38

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RICHARD WAYNE GILLINGHAM,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-92-10313
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Shannon McDonald, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Attorney General; Tammy K. Plubell, Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  May 2, 2007

Decided:  February 5, 2008

Filed:

_____
                      Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Richard Gillingham appeals from a judgment in the Fourth Judicial District, Missoula County, revoking his suspended sentences and sentencing him to serve forty-five years at Montana State Prison.

¶2 We determine that the following two issues are dispositive of this appeal:

¶3 1. Did the District Court err in revoking Gillingham's suspended sentences because he refused to sign a document in which he waived extradition from Canada, when the judgment suspending his sentence did not contain such a requirement?

¶4 2. Did the State present sufficient evidence at the hearing to revoke Gillingham's suspended sentences?

## BACKGROUND

¶5 On October 14, 1992, the State filed an Amended Information charging Gillingham with nine counts of sexual assault on minors, in violation of § 45-5-502, MCA, and one count of assault on a minor, in violation of § 45-5-201, MCA. All of the offenses were alleged to have occurred in 1991 and 1992. On April 7, 1993, Gillingham pled guilty to four counts of sexual assault and one count of assault on a minor, all felonies. The remaining counts were dismissed.

¶6 On August 6, 1993, the District Court sentenced Gillingham to ten years on each count, with the sentences to be served consecutively. The sentences were suspended on conditions. The District Court entered its written judgment that same day. Gillingham, a Canadian citizen, was deported to Canada, where he faced separate charges.

¶7 The District Court's judgment placed Gillingham under the supervision of the Department of Corrections. Section 46-23-1011(2), MCA (1991), required that he sign a

2

copy of the conditions of probation. Gillingham was deported before he signed a writing containing the conditions of his suspended sentences. His Montana probation officer, Jan Ullom, eventually contacted Gillingham's Canadian probation officer and sent him a document entitled "Rules of Probation" with the request that Gillingham sign it. This document not only listed the conditions included in the District Court's judgment, but also included an additional condition requiring Gillingham to waive extradition from Canada. Gillingham was presented with the document, but repeatedly refused to sign the rules of probation containing the extra condition. In 1996, the State filed a petition to revoke Gillingham's suspended sentences because of his refusal to sign.

¶8 On January 16, 1998, the State filed a supplemental petition to revoke, alleging three additional violations of the conditions of his suspended sentences.

¶9 In the supplemental petition to revoke, the State alleged a violation of Condition 6: "That the Defendant shall not have any unsupervised contact with any children under the age of 16 years of age." Gillingham was alleged to have taught Sunday school classes to children while unsupervised on November 2, 1997.

¶10 The State next alleged a violation of Condition 7: "That the Defendant shall not involve himself in any type of employment, service, or recreational pursuits which involves [sic] the supervision of children 16 years of age or under [and] shall not be in any position of power or authority over children, including any volunteer work." This alleged violation was based on information that Gillingham taught woodworking to children at a fair in British Columbia in September 1997.

¶11    Finally, the State alleged in the supplemental petition to revoke that Gillingham violated Condition 9: "That the Defendant shall not use any name but the name the Defendant is currently using of Richard Gillingham." This allegation was based on information that Gillingham had applied for a birth certificate for a deceased person, admitted to Canadian authorities that he was attempting to establish a new identity, and had been convicted in the Canadian criminal courts of the offense of personation.

¶12    A bench warrant was issued for Gillingham's arrest. He challenged his extradition in the Canadian and United States federal courts. It was not until late 2004 that the extradition proceedings concluded, and he was delivered into the custody of the Missoula County Sheriff. On August 30, 2005, the District Court held an evidentiary hearing on the State's petition to revoke Gillingham's suspended sentences.

¶13    At the hearing, Ms. Ullom testified to Gillingham's refusal to sign the rules of probation. She also testified that he had violated Condition 9 of his suspended sentences by attempting to obtain a Canadian birth certificate containing the name of a different person. A copy of a document stating Gillingham had been found guilty of personation was entered into evidence. The State did not present any evidence concerning the elements of the offense of personation.

¶14    The State presented two witnesses to prove the violation of Condition 6. The Anglican Parish Priest from the church where Gillingham taught Sunday school and his wife both testified that Gillingham taught a church school class to young children in a basement room separate from the other classes.

4

¶15 The State did not produce a witness to testify about Gillingham's volunteer activities teaching woodworking classes at a fair in September 1997. Even though the District Court dismissed the allegation that Gillingham had violated Condition 7 on motion of the State, it later found that Gillingham's teaching church school violated the last sentence of Condition 7, which prohibited Gillingham from being in a position of power or authority over children. However, the District Court also stated that its finding under paragraph seven was not a condition of its ultimate decision.

¶16 The District Court found that Gillingham had violated the requirement of his suspended sentences that he sign a document containing the rules of his probation. It also found that he had violated Condition 6 of his suspended sentences requiring that he not have any unsupervised contact with any children under the age of 16 years of age, and that he violated Condition 9 requiring that he not use any name other than Richard Gillingham. Based on these findings, the District Court revoked Gillingham's suspended sentences and sentenced him to forty-five years at Montana State Prison, and ordered that he not be eligible for parole. Gillingham appeals the order revoking his suspended sentences.

## STANDARD OF REVIEW

¶17 We review the revocation of a suspended sentence to determine whether it was supported by a preponderance of the evidence and whether the District Court abused its discretion. *State v. Nelson*, 1998 MT 227, ¶ 16, 291 Mont. 15, ¶ 16, 966 P.2d 133, ¶ 16. However, where a defendant presents a question of law related to constitutional rights, our review is plenary. *State v. Finley*, 2003 MT 239, ¶ 10, 317 Mont. 268, ¶ 10, 77 P.3d 193, ¶ 10.

5

## DISCUSSION

## ISSUE ONE

¶18    **Did the District Court err in revoking Gillingham's suspended sentences because he refused to sign a document in which he waived extradition from Canada, when the judgment suspending his sentence did not contain such a requirement?**

¶19    A criminal sentence may not deprive a defendant of rights except as specifically enumerated by the sentencing judge as a necessary condition of the sentence. Section 46-18-801(1), MCA. Only the sentencing judge has the power to impose probation conditions that affect a defendant's rights, and without statutory authority to do so, the Department of Corrections cannot add conditions to those articulated in a district court's judgment. *State v. Field*, 2000 MT 268, ¶ 15, 302 Mont. 62, ¶ 15, 11 P.3d 1203, ¶ 15.

¶20    The State concedes that the copy of the rules of probation Gillingham was asked to sign contained a condition not in his written judgment: the requirement that he waive extradition from Canada. At the time the charged offenses were committed, and at the time the sentences were imposed, the Department of Corrections had the authority to require that a probationer sign a copy of the conditions of probation. However, the Department did not have the authority to add to conditions of probation the requirement that a probationer waive extradition. Section 46-23-1011(2) (1991).[1] Thus, under the circumstances of this case, the District Court had no authority to revoke Gillingham's suspended sentences because he refused to sign a copy of the conditions of his probation that contained a provision it did not

---

[1] The authority to require that a probationer waive extradition for his return to Montana was added to § 46-23-1011(2), MCA, by the Fifty-Seventh Legislature in 2001. 2001 Mont. Laws

6

impose. In this instance, we conclude that the District Court erred in revoking Gillingham's suspended sentences based on his refusal to sign the rules of probation presented to him.

**ISSUE TWO**

¶21  **Did the State present sufficient evidence at the hearing to revoke Gillingham's suspended sentences?**

¶22  The State must prove that a defendant has violated the terms of his probation by a preponderance of the evidence. Section 46-18-203(6), MCA.

¶23  The District Court found that Gillingham violated Condition 6, "That Defendant not have any unsupervised contact with any children under the age of 16 years of age," because he was unsupervised while teaching a Sunday school class on November 2, 1997. Gillingham does not contest that he made arrangements to teach young children. He argues that there is no evidence that he was unsupervised when he was teaching on November 2, 1997, and thus the District Court erred in finding he violated Condition 6.

¶24  The State presented the testimony of Reverend Gray, who was the priest at Saint Stephens Anglican Church in Summerland, British Columbia, Canada on November 2, 1997. Reverend Gray testified Gillingham offered himself as a church-school teacher late in the summer of 1997. Prior to November 2, 1997, Gillingham taught children in a hall-setting where there were two or three classes in the same room. Gillingham asked to move his class, and only his particular class, to a downstairs room at the end of a hallway.

_____

2436-37. However, a defendant must be sentenced under the law in effect at the time of the offense. *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, ¶ 16, 113 P.3d 297, ¶ 16.

¶25 Kathleen Gray, Reverend Gray's wife, was the supervisor of the church school. She testified that Gillingham made arrangements with her to move his class of young boys to a small room downstairs in the church on November 2, 1997. She said on that day she went to where he was teaching and was able to hear him inside the room with four boys eight to ten years old. She said that there was no other adult in the room and there was no question in her mind that he was alone in the room with the children. On cross-examination she testified that she stood by for two or three minutes and heard Gillingham, and no other adult, speak. She also said that it was not possible that there was another adult in the room at the time. She said there was not another church-school teacher present.

¶26 The Montana Rules of Evidence do not apply to a probation revocation hearing. M. R. Evid. 101(c)(3). Nevertheless, a probation revocation hearing must be fundamentally fair. *State v. Pedersen*, 2003 MT 315, ¶ 20, 318 Mont. 262, ¶ 20, 80 P.3d 79, ¶ 20 (citing *In re Meidinger*, 168 Mont. 7, 15, 539 P.2d 1185, 1190 (1975)). Direct evidence establishes that on November 2, 1997, Gillingham had contact with four boys who were eight to ten years old in a small classroom in Saint Stephen's Church, in Summerland, British Columbia. The evidence also establishes that Gillingham himself made arrangements to be with the boys in this place of relative isolation. Further evidence establishes that there was no other adult heard in the room at the time, and there were no other adults around that were likely to be supervising him. While there is no direct proof that Gillingham was alone in the classroom with the children, there is sufficient circumstantial evidence consistent with him being the only adult in the room to sustain the finding of fact made by the District Court that Gillingham was unsupervised at the time. The District Court did not err in finding that

Gillingham violated Condition 6 of his suspended sentence.

¶27 The District Court also found a violation of Condition 9, "That the Defendant shall not use any name but the name the Defendant is currently using of Richard Gillingham." The State's proof of this violation is sparse. It consisted of Ms. Ullom's testimony that he attempted to obtain a birth certificate in someone else's name, and a copy of a judgment from an Ottawa, Ontario, Regional Municipal Court stating that Gillingham was found guilty of what is described therein as "Personation, Section 403(b) CCC – Indictment." Gillingham argues that this is not enough to establish that he was using an assumed name in violation of Condition 9.

¶28 We need not determine whether the State presented sufficient evidence to establish a violation of Condition 9. A single violation of the conditions of a suspended sentence is sufficient to support a district court's revocation of that sentence. *State v. Rudolph*, 2005 MT 41, ¶ 13, 326 Mont. 132, ¶ 13, 107 P.3d 496, ¶ 13. Gillingham's violation of Condition 6 supports the revocation of his sentences.

¶29 Gillingham goes on to argue that the District Court did not afford him due process of law because it found that he violated Condition 7, that he not be in a position of power or authority over children, when he taught church school while unsupervised. He points out that the alleged violation of Condition 7 was that he volunteered to work with children at a fair. He claims he had no notice that his sentences could be revoked for violating Condition 7 based on his teaching at the church school. We also decline to consider this argument

9

because, as noted above, the violation of Condition 6 is sufficient to revoke the suspended sentences.[2]

**CONCLUSION**

¶30    The District Court's order of January 19, 2006, revoking Gillingham's suspended sentences is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

---

[2]  Also, the District Court stated that a violation of Condition 7 was not the reason Gillingham's suspended sentences were revoked.  Thus, even if there was error, it would be harmless. *Pedersen*, ¶ 21.